[Crim. No. 23354. Second Dist., Div. Two. May 2, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
BERTRAND RONALD ANDERSON, Defendant and Appellant.

## COUNSEL

Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Susanne C. Wylie, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Found guilty of second degree murder (Pen. Code, § 189) by a jury, appellant, Berttrand Anderson, appeals from the judgment entered pursuant to the verdict.

Appellant and the victim, Sandra Heckman, had lived together for a period of about a year and a half. In April 1972, they were living together at 241 E. Washington, Apartment #2 in the City of Pasadena. The apartment was shared by Pamela Boynkin. On the evening of April 12, 1972, the three of them and Pamela's friend, James Strutt (Jim) attended a party at which they became intoxicated. They returned to the apartment at approximately 2 a.m. Sandra appeared extremely upset, was crying and paced around in the nude. Appellant, Pamela and Jim had something to eat; and at about 3 a.m. Sandra went to bed. Within minutes thereafter Sandra came out of the bedroom, appeared sullen and upset and inquired if appellant had eaten and returned to the bedroom. Within a half hour to 45 minutes appellant followed Sandra into the bedroom. Jim and Pamela went to bed in the living room.

Shortly thereafter Pamela and Jim heard Sandra crying and a series of banging noises, approximately 10 to 15 in number, which sounded as if they were coming from the wall next to the bed. Jim asked Pamela what the noise was; she replied, "Oh, it's probably Sandy just kicking the wall." Thereafter appellant was heard to say that he wanted to get some

sleep; Sandra continued to cry, was heard to leave the bedroom, enter the bathroom and turn on the water.

At approximately 10 a.m. the next morning appellant entered the living room, stated Sandra was not in the bedroom, and inquired where she was. Appellant and Jim entered the bathroom and saw the body of Sandra lying in the tub in water. She was dead. There was a red tie kimono belt around her neck. It appeared that she had been strangled from behind.

Appellant complains of prejudicial error severally and collectively in respect of the admission of evidence.

■ Appellant requested that the testimony of the pathologist which included his opinions and conclusions which had been given at the preliminary hearing without objection be read into evidence. He now contends that the pathologist's opinions and conclusions were inadmissible; that there was no basis for the conclusion that Sandra's death was due to strangulation or that death was not self-inflicted and that as a consequence the corpus delicti was not established. The record shows that appellant's attorney represented to the trial court that he had thoroughly cross-examined the pathologist at the preliminary hearing; had no objections to the testimony being read to the jury and, pursuant to appellant's request, it was read. Obviously there was no objection made in the trial court. Even in the absence of appellant's conduct above detailed, the merit or lack of merit in appellant's argument could not be raised for the first time on appeal. (*People v. Nicolaus* (1967) 65 Cal.2d 866 [56 Cal.Rptr. 635, 423 P.2d 787].) Nevertheless, we have read the record and find no error. (*People v. Deriso* (1963) 222 Cal.App.2d 478 [35 Cal.Rptr. 134].)

■ A police officer testified without objection that in October 1971, approximately six months prior to the crime treated herein, he had been called to Apartment #2 where appellant was present. He found Sandra unconscious on the bed; he observed lacerations on her head; her eyes were swollen and shut; and a swelling of her arm; and appellant said to him, "I believe"—"I hit her; please help her." Appellant argues that this evidence of confessed mistreatment was for the sole purpose of showing bad character and a disposition to commit the crime at bench and was inadmissible. (*People v. Schader* (1969) 71 Cal.2d 761, 772 [80 Cal.Rptr. 1, 457 P.2d 841].) As pointed out, in the absence of an objection it is settled that this court will not review on appeal the question of admissibility. (*People v. Rodriguez* (1971) 15 Cal.App.3d 481 [93 Cal.Rptr. 182].) In addition it appears from the record that the failure to object in the trial court was a calculated part of defense strategy. After the police officer testified there was extensive cross-examination and re-cross-exam-

ination on the thrust of the defense, to wit, that Sandra was emotionally unstable; had a propensity to commit suicide and appellant was concerned for her safety.

■ Appellant argues also that testimony by a police officer given without objection that appellant could not when requested show how the knots were tied around Sandra's neck should have been excluded. He asserts he was required to perform this test upon a coffee cup with string, and not upon a human neck with a kimono belt and that therefore the conditions were not similar. Questions re admissibility of evidence will not be reviewed on appeal in the absence of a timely objection. (*People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].)

On April 13th and 15th appellant was questioned by officers. On each occasion he was admonished of his constitutional rights and he waived the same. On April 15th appellant was told Sandra had been strangled from behind; it was impossible for her to have strangled herself; it was impossible for her to have hung herself; and she had been strangled by someone who was standing behind her at the time it occurred. Appellant nevertheless denied strangling or killing Sandra. The officer returned the next day, April 16th, and once again interrogated appellant. The officer testified that appellant then stated that he had been having trouble sleeping and he just couldn't remember and that he might have killed her, but he just couldn't remember.

Appellant urges the above statements were not an admission and do not connect him with the crime, the net effect of which is an argument as to the sufficiency of the evidence. ■ Our power on appeal is limited to determine whether substantial evidence supports the finding of guilt; not whether the evidence proves guilt beyond a reasonable doubt. (*People* v. *Reilly* (1970) 3 Cal.3d 421 [90 Cal.Rptr. 417, 475 P.2d 649].) ■ We must view the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) ■ Before we may set aside a judgment for insufficiency of the evidence to support the verdict of the jury, it must appear that upon no hypothesis whatever is there sufficient substantial evidence to support the judgment, (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ The evidence against appellant is circumstantial. Circumstantial evidence, however, is sufficient to sustain a murder conviction if it is substantial. (*People* v. *Reilly, supra,* 3 Cal.3d at page 424.)

Pertinent excerpts from the record show no lack of undisputed circumstantial evidence: in addition to the incident in October 1971 heretofore set out, appellant testified to other acts of violence he committed on Sandra. Once Sandra tried to cut her wrists after an argument with appellant. When he tried to help her, she began fighting with him. As a result he had to slap her a couple of times. When the police arrived ". . . [S]he was all bruised up from where I slapped her. It looked like I hit her with a baseball bat."

On the Tuesday before the murder appellant and Sandra had had an argument. As a result he moved his belongings and announced that he was leaving. An altercation ensued and in appellant's own words, "I went to walk out, and she was following me. I don't remember exactly what happened, but I slapped her, and her glasses shot out, you know, and blood started coming from her nose. I said, 'shoot,' you know, like I am killing her or something."

On the morning of the murder appellant and Sandra had an argument. Although neither Jim nor Pamela saw any injuries to Sandra's face or body before she retired, the pathologist found bruises of a recent origin in the victim's eye and jaw, injuries to the front, back and top of the head, and a fractured rib.

Other than the banging sounds heard coming from the bedroom and sounds of Sandra crying, no other sounds of a disturbance were heard that morning by the other occupants of the apartment. Appellant denied hearing the banging noises, although they were loud enough to have been heard by a neighbor in another apartment. Appellant gave conflicting versions before and during the trial as to how the belt was tied around Sandra's neck when he found her. Finally appellant admitted he could not fully account for his actions on the night of the murder and he might have killed her; he just didn't remember.

Based upon the foregoing evidence and the totality of the circumstances, the jury could reasonably have determined that it was appellant who killed Sandra. (Cf. *People* v. *Reilly* (1970) 3 Cal.3d 421, 424-425 [90 Cal.Rptr. 417, 475 P.2d 649].)

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied May 22, 1974, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1974.