Melvin Meffrey WADE, Petitioner,

v.

Daniel VASQUEZ, Warden of San Quentin Prison, Respondent.

No. CV89–0173–R.

United States District Court, C.D. California.

Oct. 18, 1990.

Donald J. Ayoob, Deputy State Public Defender, San Francisco, Cal., for petitioner.

Pat Zaharopoulos, Jay M. Bloom, Deputy Atty. Gen., San Diego, Cal., for respondent.

## SECOND AMENDED OPINION

REAL, Chief Judge.

Petitioner MELVIN MEFFREY WADE (WADE) has filed a Petition For Writ of Habeas Corpus By a Person In State Custody alleging his conviction and death sentence for: murder; torture special circumstance, and heinous, atrocious and cruel special circumstances is unconstitutional on various grounds; They are:

1. Ineffective Assistance of Counsel at Voir Dire
2. Ineffective Assistance of Counsel at Guilt Phase
3. Ineffective Assistance of Counsel at Sanity Phase
4. Ineffective Assistance of Counsel at Penalty Phase
5. Ineffective Assistance of Trial Counsel Post–Conviction and Sentence
6. Juror Misconduct/Receipt, Discussion and Consideration of Extra–Records Facts at Guilt Phase
7. Juror Misconduct/Receipt, Discussion and Consideration of Extra–Record Facts at Sanity Phase
8. Juror Misconduct/Receipt, Discussion and Consideration of Extra–Record Facts at Penalty Phase
9. Presumption of Death/"Shall" Instruction
10. Failure to Instruct to Consider All Mitigation
11. Limitation on Consideration of Mitigating Evidence Relating to Petitioner's Mental and Emotional Condition
12. Introduction of Evidence of Unadjudicated Criminal Activity
13. Skewing of Weighing Process
14. The Torture–Murder Special Circumstance Instruction
15. Denial of Meaningful Appellate Review
16. Battered Parent
17. Multiple Defects in Capital Sentencing Process

None of the 17 grounds has been supported by credible evidence and so the petition must be denied. The consideration of each ground is as follows:

1. **INEFFECTIVE ASSISTANCE OF COUNSEL AT VOIR DIRE—GUILT PHASE—SANITY PHASE—PENALTY PHASE—POST–CONVICTION AND SENTENCE**

These five (5) grounds are subsumed within the consideration of trial counsel preparation and performance at the trial of petitioner. On these issues this Court must be guided by the United States Supreme Court in its decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland*, supra at 687, 104 S.Ct. at 2064 sets forth the burden of a petitioner in establishing the ineffective assistance of counsel as:

> "... First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes *both* showings it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (emphasis added)

Petitioner has unfortunately failed on both aspects of the *Strickland*, supra test. Petitioner was represented at trial by S. Donald Ames (AMES). At the time of his appointment to represent WADE, AMES had been engaged in the practice of criminal law for nine (9) years—six of those nine years as a County Public Defender and three years in private practice specializing in criminal defense. Before his appointment to represent WADE he had defended one Steven Anderson in a Capital trial. (See *People v. Anderson*, 38 Cal.App.3d 952, 113 Cal.Rptr. 729 (1974)). Judge Ben Kayashima, the trial judge in the WADE trial described AMES as "one of the top ten criminal defense attorneys in the county" and "one out of five qualified to try death penalty cases."

WADE had been represented by one Daniel Greenberg before AMES' appointment. Greenberg had made and lost a change of venue motion. Greenberg also had WADE examined by a psychiatrist and

psychologist. This information was given by Greenberg to AMES with the comment that the case was an absolute loser and he—Greenberg—did not want his name associated with a loser.

## A. VOIR DIRE

█ WADE claims that AMES should have questioned the jury panel on bias or prejudice against applying the law of insanity or diminished capacity. But the problem with WADE'S position is that at the time of voir dire, AMES, after studying the psychiatric and psychological material he had received from Greenberg and the reports he received from the psychologist and neurologist he had engaged to examine WADE, had already determined WADE did not have a psychiatric or diminished capacity defense. It was only after the jury had been selected that AMES received some information that he believed might support an insanity defense of disassociative disorder. Immediately AMES moved for a mistrial on the ground he did not have a chance to voir dire the jury on an insanity defense. The mistrial motion was denied by the trial judge. There was no constitutional error.

## B. GUILT PHASE

█ WADE claims that AMES failed to make a sufficient investigation and to prepare prior to trial. In making these assertions WADE urges this court to make that determination based on the time AMES requested to be paid under his appointment and the time spent by AMES' investigator one D.J. Alton (ALTON). AMES claimed 12.5 hours and ALTON claimed he met with AMES on 35 different dates. Time spent on the preparation of any matter cannot be the deciding criteria for the constitutional adequacy or inadequacy of the performance of one charged with the duty to competently represent a client. Experi-

ence tells us that what may take one person an hour to prepare may take others 5, 10 or 20 hours to accomplish the same level of preparation. In some cases, no matter how many hours are spent, competency in the subject matter is never accomplished. Moreover, AMES testified that he spent considerably more hours than he claimed for reimbursement purposes. He explained that San Bernardino County was rather niggardly in the payment of counsel time and so he didn't bother to claim all the hours he spent working on WADE'S trial. The County's attitude on counsel payments in appointive cases was corroborated by Judge Ben Kayashima. AMES' testimony is credible and he should not be branded incompetent on the basis of his compensation claim.[1]

AMES tried WADE'S case presenting a defense he judged to be his only defense—disassociative disorder. He knew the facts of the murder well and could not find any factual dispute with the details of the events surrounding the murder. His judgment that the only defense he could present was a disassociative disorder defense should not be deemed incompetence. The defense, if any he had, was presented well and competently by an experienced criminal lawyer. The result of the guilt phase was tragic to WADE but no more tragic than the facts that brought him to trial for the murder of the daughter by a prior marriage of his wife, Irabell "Cookie" Strong.

## C. SANITY PHASE

█ AMES had presented all the psychiatric testimony on the disassociative disorder defense in the guilt phase of the trial. He explained that strategy was adopted because of the otherwise lack of facts that could be used as a defense. More importantly AMES wanted the jury to learn as early as possible about the fact that they

---

1. Thomas McDonald, WADE'S expert on trial competency testified to necessary preparation for WADE'S trial. Taking Mr. McDonald's testimony at face value he describes a "perfect" trial preparation with what would add up to thousands of hours of preparation. He testified to such a "perfect" preparation in a capital case he

tried involving 16 counts of murder. (See *People v. Randy Steven Kraft,* Orange County No. C–52776 appeal pending California Supreme Court No. S013197). The jury in that case returned death penalty verdicts in all 16 counts. Witherspoon's standard is not *perfection* but constitutional adequacy.

were, as he put it, "dealing with a very sick human being."

Having put WADE'S social history in through the medical experts, AMES made the judgment call that he had presented to the jury a complete picture of his client.

WADE faults AMES for not presenting evidence of his use of PCP or the fact that he was a battered child. Both were produced in evidence through various witnesses during the trial. AMES did not want to press a defense based on the use of PCP because, in his judgment, that defense tactic would prove useless in San Bernardino County given the facts of the murder. Moreover, there was no evidence to support recent use of PCP. What evidence WADE indicated was available was incompetent hearsay.

Having given what in effect was his strongest joint guilt and sanity defense, AMES cannot be faulted for not recalling the medical experts to repeat what they had already told the jury. AMES did not fail the *Strickland* test, supra in the sanity phase.

### D. PENALTY PHASE

■ WADE faults AMES for not calling WADE'S mother and sister in the penalty phase of his trial. AMES presented everything WADE'S mother or sister could have testified to through the medical experts. WADE'S criticism of that method of presenting "mitigating evidence" is that "the failure to produce these witnesses diminished the impact of such evidence." AMES had decided from his talk with WADE'S mother and the information he was given by his investigator about the testimony of WADE'S sister that the testimony of WADE'S mother and sister would have been at odds with each other. He decided—and no one on this record can say improperly—that he would not use them in the penalty phase. Certainly where the evidence would be repetitive, who to use and how it should be presented to the jury is judgmental in every respect. As an experienced trial lawyer, AMES made that judgment. The fact that he was not successful in his attempts to spare WADE'S

life does not measure his competency or the expression of that competency in defense of WADE.

The California Supreme Court held on direct appeal, *People v. Wade*, 44 Cal.3d 975, 244 Cal.Rptr. 905, 750 P.2d 794 (1988), that AMES' argument was a reasonable and tactical one, aimed at gaining the jury's sympathy for his client.

The penalty phase of a capital case is largely the persuasive effects of the testimony of the defendant himself in asking for the mercy of the jury and the advocacy of counsel for a defendant to be persuasive enough to overcome the facts of the murder itself. To attempt to justify the fact of the murder AMES decided to continue his "Melvin didn't do it" defense of disassociative disorder. If he could raise a "maybe?" in the minds of the jurors his tactic might succeed. He didn't and it didn't. He cannot be faulted for the jury's rejection of his argument since the murder could not be described in any other way than atrocious and the evidence was overwhelming of the violence with which the murder had been committed. AMES had to attempt to convince the jury that "someone else" was beating to death a 10 year old child over a period of 24 hours. The only someone AMES had available to him was Othello, his other self. AMES could not have convinced this jury to spare WADE'S life because he was drug or alcohol crazed or a "battered child" adult. The California Supreme Court correctly decided that AMES was reasonable in begging for sympathy for his client. It was all he had.

### E. POST CONVICTION AND SENTENCE

■ WADE'S claim on this issue appears to be focused on some failure of AMES to "preserve the file so it could be used by petitioner or subsequent counsel in litigating the constitutional claims presented by this petition." This appears to be based on the fact that AMES moved his offices in July 1985 and the trial file in WADE'S case was lost during that move. Without more, the loss of a file can hardly raise itself to any violation of the Sixth Amendment right

to the effective assistance of counsel. Loss of a file without more is not constitutional error. WADE has shown no prejudice by reason of the loss of the file.

2. JUROR MISCONDUCT/RECEIPT, DISCUSSION AND CONSIDERATION OF EXTRA—RECORD FACTS AT GUILT PHASE—SANITY PHASE—PENALTY PHASE

For whatever purpose was in the mind of counsel for WADE the claimed juror misconduct has been separated into three separate claims. Together they make only one claim, i.e. juror misconduct by receipt, discussion and consideration of extra-record facts. No credible evidence supports that claim for any phase of the trial.

To support this claim WADE was given the opportunity to send interrogatories to the jurors to determine what facts could be elicited to support his claim. None were sent and none were presented at the hearing of this petition. WADE has totally failed on these claims. What evidence WADE did present could not support his claim of juror misconduct.

3. PRESUMPTION OF DEATH/ "SHALL" INSTRUCTION

The trial court's instructions were fully reviewed by the California Supreme Court on direct appeal *People v. Wade*, 44 Cal.3d 975, 244 Cal.Rptr. 905, 750 P.2d 794 (1988). The finding of adequacy of the court's instructions is well supported by the record and law as applied by the Supreme Court of California. That determination may not be disturbed on consideration of this petition (See *Boyde v. California*, 494 U.S. ——, 110 S.Ct. 1190, 108 L.Ed.2d 316, *reh'g denied*, 494 U.S. ——, 110 S.Ct. 1961, 109 L.Ed.2d 322 (1990)).

4. FAILURE TO INSTRUCT TO CONSIDER ALL MITIGATION

The trial court's instructions on this issue were reviewed by the California Supreme Court on direct appeal in *People v. Wade*, supra, 44 Cal.3d at 986, 244 Cal. Rptr. 905, 750 P.2d 794. The record and the law support the California Supreme Court's decision in this respect and it need not be disturbed on consideration of this petition. (See *Boyde*, supra).

5. LIMITATION ON CONSIDERATION OF MITIGATING EVIDENCE RELATING TO PETITIONER'S MENTAL AND EMOTIONAL CONDITION

Again *People v. Wade*, supra, 44 Cal.3d at 997, 244 Cal.Rptr. 905, 750 P.2d 794, answers this ground as set forth above (See *Blystone v. Pennsylvania*, 494 U.S. ——, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990)). Again, this court agrees with the California Supreme Court's factual and legal findings on this issue.

6. INTRODUCTION OF EVIDENCE OF UNADJUDICATED CRIMINAL ACTIVITY

The California Supreme Court in *People v. Wade*, supra, 44 Cal.3d at 989–992, 244 Cal.Rptr. 905, 750 P.2d 794, on direct appeal analyzed and concluded that this evidence was admissible. That analysis is constitutionally sound and should not be upset on consideration of this petition. This evidence was admitted for a limited purpose under California law, and the trial judge gave the jury an appropriate limiting instruction.

7. SKEWING OF WEIGHING PROCESS

WADE raised no constitutional infirmity in relation to the consideration of this issue. To the extent Wade asserts a constitutional claim because the trial court did not instruct the jury that it must find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances and that death was the appropriate punishment, his claim is without merit. The Ninth Circuit has rejected a similar argument, noting that the "United States Supreme Court has never stated that a beyond-a-reasonable-doubt standard is required when determining whether a death penalty should be imposed." *Harris v. Pulley*, 692 F.2d 1189, 1195 (9th Cir. 1982), *rev'd on other grounds*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

## 8. THE TORTURE—MURDER SPECIAL CIRCUMSTANCE INSTRUCTION

■ The analysis of the California Supreme Court in *People v. Wade*, supra, 44 Cal.3d at 993–994, 244 Cal.Rptr. 905, 750 P.2d 794 on direct appeal from WADE'S conviction concludes there is no constitutional infirmity because "there is no reasonable likelihood that the jury was misled on this issue." A review of the record leads this court to the same conclusion.

In addition, this court agrees with the California Supreme Court's reasoning in *People v. Wade*, supra, 44 Cal.3d at 993, 244 Cal.Rptr. 905, 750 P.2d 794, and *People v. Davenport*, 41 Cal.3d 247, 270–271, 221 Cal.Rptr. 794, 710 P.2d 861 (1985) that the torture-murder special circumstance is not unconstitutionally vague or overbroad, and does narrow the class of murderers subject to the death penalty.

## 9. DENIAL OF MEANINGFUL APPELLATE REVIEW

There is nothing in the record to support a claim of denial of meaningful appellate review. The California Supreme Court's opinion in *People v. Wade*, supra demonstrates a thorough analysis of the record, the facts, and the law.

## 10. BATTERING PARENT

■ WADE contends that it would violate the Eighth Amendment ban on cruel and unusual punishment to sentence him, a formerly battered child, to death for killing his child in the course of disciplining her. This court adopts the findings of fact and law set forth by the California Supreme Court in *People v. Wade*, supra, 44 Cal.3d at 999, 244 Cal.Rptr. 905, 750 P.2d 794 ("The record indicates that ... defendant beat and tortured his stepdaughter over an extended period, having ample time to reflect upon the nature of his acts. Under these facts we cannot hold that the punishment imposed is disproportionate to his individual culpability").

2. HELFT offered no more than a nebulous

## 11. MULTIPLE DEFECTS IN THE CAPITAL SENTENCING PROCESS

This claim is, in essence, a claim that all of the other issues raised, in the aggregate, make WADE'S sentence unconstitutional. Since all other issues raised by WADE have been rejected, this claim must also fail.

WADE raises an issue outside the petition that this court should have disqualified the State Public Defender's Office due to a claimed conflict of interest in that Barry P. Helft (HELFT), a deputy State Public Defender, was aware of evidence that would prove AMES incompetent.

The issue is totally bogus. First, (HELFT) did not appear in this case until the motion to disqualify was brought by the State Public Defender. Second, the State Public Defender totally misconstrues the law and ethical considerations of conflict of interest. HELFT, if anything, was adverse to AMES and not to any client of the State Public Defender. There is absolutely no reason why HELFT could not have testified on behalf of WADE on the incompetency of AMES if he had such evidence.

The filing of the motion to recuse was simply an attempt to delay the hearing on the petition. That was obvious from the late entry of HELFT into the matter and the totally frivolous arguments on the supposed conflict of interest with "his client."

The so-called discovery by respondent of the nature of HELFT'S testimony would, in the ordinary course of progress of any litigation, have been discoverable either by deposition or written interrogatory. The refusal of the State Public Defender to disclose to the State the information HELFT supposedly had of the incompetence of AMES in the defense of WADE left the court with no alternative but to deny the motion. Even assuming HELFT'S "former personal relationships as a relative by marriage of the witness," [2] nothing could be more inapposite to the ethical standards controlling lawyer conduct in considering the lawyer's conflict of interest to his client. HELFT owed no

claim of "relative by marriage."

duty to AMES to refrain from any investigation or presentation of facts that could be of benefit to WADE.

HELFT was not disqualified from the case because of any conflict of interest. What HELFT was advised was that if he were going to be a witness, particularly as set forth by ethical standards, he could not be part of the conduct of the trial since his credibility would become an issue. HELFT was never called as a witness but did sit at counsel table throughout the hearing. Nothing presented to this court could be deemed to have disqualified the office of the California State Public Defender.

This opinion shall be deemed to be the findings of fact and conclusions of law required by Federal Rules of Civil Procedure Rule 52. The court further adopts the facts and the law of *People v. Wade*, 44 Cal.3d 975, 244 Cal.Rptr. 905, 750 P.2d 794 (1988).