[Crim. No. 8014. In Bank. June 17, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JIM FRANK-LIN ROBINSON, Defendant and Appellant.

---

Nat A. Agliano, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—In this appeal from a judgment of conviction on three counts of forgery, defendant raises two issues: whether the trial court erred in admitting evidence obtained as the result of a police search of the car in which he was riding, and whether the trial court improperly permitted the introduction of certain of his statements in view of the recent decision in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. We explain why we have rejected each of these contentions.

On March 14, 1963, Officer Rathbone and Sergeant Lewis of the Needles Police Department, while riding in a patrol car in that city, received a call from the police station to the effect that two men in a car were drunk; that one of them, who had a credit card, had asked a service station attendant whether he had a "hot sheet" on credit cards; that, after obtaining an affirmative reply, the man purchased gasoline and paid for it with cash. The officers arrived at the service station as the automobile left; they followed it for several blocks, observing that it was proceeding in a wobbling manner. When Sergeant Lewis turned on the red light of the patrol car the officers saw defendant, who was a passenger, leaning over as though he were trying to put something out of sight.

The officers stopped the car directly in front of the police station. The two men were apparently intoxicated; Sergeant Lewis took them into the station for further examination. The sergeant gave the driver of the automobile an intoximeter test, and while the desk officer was booking defendant for

drunkenness in public and in a vehicle. the sergeant assigned Officer Rathbone to search the car.

In the glove compartment of the car Rathbone found a notice from the California Motor Vehicle Department advising that defendant's driver's license had been suspended. He noticed that the floor mat on the passenger's side had been partially turned back; after raising the mat, he discovered under it the following: an ''AFL-CIO union book'' made out in the name of Raymond McCullum; a Los Angeles County Hospital outpatient card in the name of Raymond McCullum; a blood donor's card in the same name; a check in the sum of $157 on which the maker's name was Chester Barth and the payee's name Raymond D. McCullum. Rathbone further observed that the rear seat of the automobile was not in its correct position but that it ''stuck up just a little bit,'' and upon looking under it he found, wrapped in a pillow case, a Paymaster check protector from which the serial number had been removed.

The officers thereafter searched defendant personally; they found in his left sock a Shell credit card and a social security card, both issued to Charles W. Campbell. The officers then attempted to interrogate defendant but failed because of his intoxicated condition.

On the next morning Rathbone, Lewis, and the chief of police asked defendant where he had obtained the items found in the automobile, and defendant orally stated, in substance, as follows: he had purchased the $157 check, the check protector, and the identification cards for $50 from a person named Blackie whom he had met at the K C Club in Oildale. Blackie had told defendant that the material was ''all hot'' and advised him not to use it in the Bakersfield area. Defendant knew that the check was a forgery and intended to take it to Oklahoma and pass it there because it was ''too hot'' to cash in the Bakersfield area. Defendant denied that he had passed any checks up to that time. He asserted that he would be glad to go with a police officer to Bakersfield and show him where Blackie was. He explained that he was purchasing the automobile in his brother-in-law's name. He made the statements voluntarily and without any promises or threats by the officers.

On March 18 the Municipal Court of Bakersfield issued a warrant for the arrest of defendant. Subsequently, Officer Thomas Comer of the forgery detail of the Bakersfield Police Department was sent to Needles to pick up defendant. De-

fendant was then released to Comer's custody and taken to Bakersfield. During that return trip Comer questioned defendant regarding the various items found in the automobile; defendant gave Comer a statement similar to that which he had made at Needles as to his purchase of the articles from the person whom he knew as Blackie. Defendant then, according to the officer, "volunteered the information that he felt that he would possibly go back and I forget his exact words, but he meant 'go back to prison' and that if he talked, he would find a knife between his ribs after he got back there. . . ." Defendant was first taken to the police department and then booked in the county jail. Comer attempted to locate a person named Blackie, but the owner and bartender of the K C Club disclaimed knowledge of anyone by that name.

At a police lineup in the jail several persons from the Bakersfield and Oildale area identified defendant as a person who had presented forged checks early in March 1963. Two of the checks had been taken from the company checkbook of the Barth Tractor Company of Gridley, California; the maker's signature was purportedly "Chester Barth." A third check, drawn on an Oildale bank, belonged to C & J Auto Sales and had been taken from its checkbook; the signature of the maker was illegible. All of the checks bore the name of Raymond McCullum as payee. An expert witness testified to the effect that the handwriting on the three checks corresponded to an exemplar of defendant's handwriting which had been obtained at the Bakersfield Police Department and that the check protector found in the automobile in which defendant was riding had been used in making the checks.

Defendant fails to establish his contention that since his arrest was not grounded upon reasonable cause the products of the search could not properly be admitted into evidence. Not only does defendant fail to meet the procedural requirement for an objection to such evidence at the trial level but his contention lacks substance in that the search was incident to a lawful arrest.[1]

---

[1] A further possible defense issue arose subsequent to the oral argument when the United States Supreme Court held that the Fourteenth Amendment prohibited comment on the failure of a defendant to take the stand. (*Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].) The record shows that the trial court gave an instruction inconsistent with this rule. After a review of the entire record, however, we have concluded that in the absence of such an instruction it is improbable that the jury would have reached a verdict more favorable to the defendant. (*People* v. *Bostick* (1965) *ante*, p. 820 [44 Cal.Rptr. 649, 402 P.2d 529].)

At the commencement of trial, after being advised by the court that he was entitled to counsel but not to the aid of an attorney as legal advisor, defendant stated that he wished to represent himself, waived his right to counsel, and participated in the dismissal of his court-appointed counsel. Acting in propria persona, defendant did not object to the introduction of the articles discovered in the automobile or to the introduction of his oral statements to the police. He did, however, at one point in the trial, ask Officer Rathbone whether upon arrest police normally followed the procedure of tearing out a floor mat halfway and ripping it, but the court sustained an objection to that question. Such an inquiry obviously does not constitute a sufficient objection to the introduction of illegally obtained evidence.

■ Except in certain circumstances not present here, the admissibility of evidence will not be reviewed on appeal in the absence of a sufficient objection in the trial court. (*People* v. *Richardson* (1959) 51 Cal.2d 445, 447 [334 P.2d 573]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262 [294 P.2d 17]; see *Henry* v. *Mississippi* (1965) 379 U.S. 443 [85 S.Ct. 564, 13 L.Ed.2d 408]; compare *In re Shipp* (1965) *ante,* p. 547 [43 Cal.Rptr. 3, 399 P.2d 571].) Defendant contends that the lack of objection should be excused in the present case because he acted as his own counsel. **[2]** Yet the fact that defendant rejected the services of a court-appointed attorney cannot vitiate the rule that requires timely objection. A defendant who chooses to represent himself assumes the responsibilities inherent in the role which he has undertaken. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 793-794 [336 P.2d 937].)

As we have noted, moreover, defendant's contention lacks substance. ■ Since defendant and the driver of the car were intoxicated, their arrests were lawful. (Veh. Code, § 23102; Pen. Code, § 647, subd. (f); Pen. Code, § 836, subd. 1.) ■ As incident to such arrest the police officers, for the purpose of discovering evidence of the crime, could properly search not only defendant and the driver but the car as well. Thus the officers could lawfully examine the interior of the car for the possible presence of liquor containers.

■ The abnormal position of the rear seat and defendant's attempt to hide something beneath the front seat constituted circumstances justifying search in these areas. Once they had commenced their search, and it remained reasonable in scope, the officers were not required to close their eyes to evidence of other crimes. (*People* v. *Roberts* (1956) 47 Cal.2d 374 [303

P.2d 721]; cf. *Yonchar* v. *Superior Court* (1961) 193 Cal. App.2d 135 [14 Cal.Rptr. 93].)

*Preston* v. *United States* (1964) 376 U.S. 364 [88 S.Ct. 881, 11 L.Ed.2d 777], and *People* v. *Burke* (1964) 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], do not alter the above analysis. These cases, which were decided after the trial of the instant case, do not apply because here the search was not "too remote in time or place to have been made as incidental to the arrest" (*Preston* v. *United States, supra,* at p. 368).

In the case before us, the police conducted their search at the *place* of arrest, i.e., in front of the police station, at a *time* virtually contemporaneous to that of arrest. ■ Viewing the matter realistically, we conclude that the officers, in taking defendant a few steps away to the interior of the police station, acted as reasonably as if they had ordered him to stand in front of his car while they conducted their search. Since the latter course would clearly be incidental to an arrest, the procedure actually employed must as its equivalent be accorded the same legal effect. (See *People* v. *Burke, supra,* 61 Cal.2d 575, in which the court held *inter alia* that a search of the interior of an automobile at the time and place of arrest constituted reasonable procedure when incident to a lawful arrest.)

In *Preston,* the Supreme Court of the United States found the search of defendant's car unreasonable because it was not undertaken immediately after the arrest. Such search was not incidental to the arrest because the police officers delayed making it until after they had placed the vehicle in a police garage. "At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. . . ." (*Preston* v. *United States, supra,* 376 U.S. 364, 368.) In the instant case, however, no such delay occurred.

■ Assuming the legality of the *search,* the defendant alternatively contends that the officers unlawfully *seized* the union book, cards, and check protector. These items, he argues, are not contraband and at most constituted "mere evidence" of a crime unrelated to that for which he was arrested. Under the special circumstances of this case, however, the seizure was reasonable. Prior to the arrest, the officers had been informed that defendant and another had inquired at a gas station about a "hot sheet," and had thereafter paid in cash even though possessing a credit card. This fact, coupled with the later discovery of the cards and the check in the name of

Raymond D. McCullum and the check protector in a concealed and suspicious location within defendant's car, supported a reasonable belief that such items were instrumentalities of the crime of forgery. Consequently, the officers were justified in seizing them.

We come now to the second set of issues raised by this appeal: whether the defendant's statements made to the police after his arrest were improperly introduced into evidence under the rule of *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado* (1965) *ante,* p. 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Defendant's extrajudicial statements may be separated into two groups: (1) those statements which he gave to the Needles police, and (2) the statements which he gave Bakersfield Police Officer Comer.

Regarding the first set of statements, defendant said in substance that he had purchased the items found in the car from a man named Blackie, that Blackie had warned him not to use them in the Bakersfield area because they were "hot," and finally that he was not involved in passing checks in Bakersfield. Obviously, at this point the police entertained a strong suspicion that defendant was involved in some type of criminal activity. The identification cards in a name other than defendant's, the check, and the check protector, plus the implausible "Blackie" story, all point unmistakably to the probability that defendant was engaged in illegal activities.

Assuming that the accusatory stage had been reached, and that defendant's statements had been obtained in violation of his constitutional rights (*People* v. *Stewart* (1965) *ante,* p. 571 [43 Cal.Rptr. 201, 400 P.2d 97], defendant still fails to establish ground for reversal of the trial court's decision. We held that incriminating statements that do not constitute a confession are not prejudicial per se but require us to decide, after an examination of the entire cause, if it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the introduction of such statements. (*People* v. *Hillery* (1965) *ante,* p. 692 [44 Cal.Rptr. 30, 401 P.2d 382].)

In the instant case defendant's statements did not constitute a confession. Defendant did not confess nor admit the commission of any of the crimes charged. To the contrary, defendant gave the Needles police an exculpatory statement that he had not passed any checks and he had purchased the suspicious articles found in his car from a person named Blackie.

Our examination of the record leads us to conclude that defendant suffered no prejudice by the introduction of the statements. Witnesses identified the defendant at a police lineup as the person who had passed certain checks in Bakersfield. These checks bore the name of Raymond D. McCullum as payee, the same name found on the cards in defendant's automobile. Further, an expert witness testified that the handwriting on the checks corresponded to an exemplar of defendant's handwriting and that the check protector found in defendant's car had been used in making these checks. In the light of this evidence we cannot say that it is reasonably probable that the jury would have reached a verdict more favorable to the defendant if his statements had been excluded.

■ As to the second set of defendant's statements, which were later used against him at the trial, we find that these constituted in effect a reiteration of the earlier narration to the Needles police. Since the statements were identical to those previously rendered they added nothing to the case against defendant.

■ Defendant did make one statement to Officer Comer, which was not contained in his statements to the Needles police. During direct examination by the district attorney, Officer Comer testified that defendant said ''that he felt that he would possibly go back and I forget his exact words, but he meant 'go back to prison' and that if he talked, he would find a knife between his ribs after he got back. . . .'' Although the above statement of defendant indicates that he had been previously imprisoned, it is neither a confession, an admission, nor an incriminating statement. In our judgment the introduction into evidence of such an ambiguous statement did not work prejudice in this case.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Burke, J., and Schauer, J.,* concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.