[Crim. No. 11175.   Second Dist., Div. Three.   Mar. 29, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. ROBERT JACKSON, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert Lederman, Deputy District Attorneys, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, Marvin Schwartz and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

KAUS, J.—After a preliminary hearing defendant was bound over on a charge of possession of marijuana for sale. (Health & Saf. Code, § 11530.5.) The superior court set aside the information after a motion under Penal Code, section 995. The People appeal. (Pen. Code, § 1238, subd. 1.)

The evidence before the committing magistrate may be summarized as follows: Officers Barton and Schmidt of the Los Angeles police department were in a black and white patrol car at about 7:15 p.m. on May 6, 1965. They were northbound in a residential area. Defendant was observed southbound, driving a car with a defective windshield. It appeared as though a rock had been thrown at it. The officers turned their car around and stopped defendant about one block from where they had first seen him. The side windows of his car were up. Defendant stepped out of his car, leaving the door open. When Officer Barton approached the vehicle to check the windshield he noticed a strong odor which, based on adequate experience and training, he identified as the smell of marijuana coming from a smoked cigarette. Defendant's eyes were glassy, "one of the symptoms of being intoxicated." Barton's partner, Officer Schmidt, testified as follows: "Q. Did you notice the condition of the defendant at that time? A. The defendant appeared to be in the first stages of being under the influence of alcohol, which also resembles the same type of symptoms of the person who smokes marijuana. Q. What are some of those symptoms? A. Bloodshot or glassy eyes. He also appeared to be staggering like he was in a type of daze, I guess you would call it." The interior of the car was searched, but nothing of any incriminating nature was found. On request, defendant gave the officers the key to the trunk of his car where, in a paper bag, Barton observed several rolls of newspaper. He

removed one piece of newspaper, opened it and noticed it contained a substance resembling marijuana. It was stipulated for the purpose of the preliminary hearing that a police chemist would testify that the substance was marijuana and that the total weight of the weed found was 243 grams.

Sometime before the officers stopped defendant they had been advised by a fellow officer that defendant was selling marijuana from his car. They had in the past observed his car parked in front of a pool hall, but they were not specifically looking for him that the time when they first observed him that night.

█ It is evident that the officers were entitled to stop defendant's car for an apparent violation of Vehicle Code, section 26710.[1] When he stepped from the car the smell of marijuana and his appearance entitled the officers to arrest him on an apparent violation of Vehicle Code, section 23105.[2] It is immaterial whether the search of the automobile followed or preceded the arrest (*People* v. *Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116]), as long as it was "substantially contemporaneous" therewith and at the time of the search the officers were justified in making the arrest. The search of the automobile was immediately made. It was not the type of search condemned in *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]. More in point is *People* v. *Robinson,* 62 Cal.2d 889 [44 Cal.Rptr. 762, 402 P.2d 834], decided just five days before the order appealed from and evidently not published at the time. In that case police officers obtained information that two men in a car were drunk and that while at a gas station one of them had behaved suspiciously with reference to a possible credit card fraud. The officers found the car and when they turned their red light on it, defendant appeared to be hiding something. The car was stopped directly in front of the police station. Both occupants appeared intoxicated and were taken into the station. While defendant was being booked an officer was assigned to search the car. The search revealed certain evidence which was later used to convict defendant of forgery.

One of the defendant's contentions on appeal was that the officers had conducted an unreasonable search. The Supreme Court met it in the following fashion: "As we have noted, moreover, defendant's contention lacks substance. Since de-

[1] "Defective windshield and rear windows."

[2] Driving while addicted to or under the influence of narcotic drugs.

fendant and the driver of the car were intoxicated, their arrests were lawful. (Veh. Code, § 23102; Pen. Code, § 647, subd. (f); Pen. Code, § 836, subd. 1.) As incident to such arrest the police officers, for the purpose of discovering evidence of the crime, could properly search not only defendant and the driver but the car as well. Thus the officers could lawfully examine the interior of the car for the possible presence of liquor containers. The abnormal position of the rear seat and defendant's attempt to hide something beneath the front seat constituted circumstances justifying search in these areas. Once they had commenced their search, and it remained reasonable in scope, the officers were not required to close their eyes to evidence of other crimes. (*People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721]; cf. *Yonchar* v. *Superior Court* (1961) 193 Cal.App.2d 135 [14 Cal.Rptr. 93].)

"*Preston* v. *United States* (1964) 376 U.S. 364 [88 S.Ct. 881, 11 L.Ed.2d 777], and *People* v. *Burke* (1964) 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], do not alter the above analysis. These cases, which were decided after the trial of the instant case, do not apply because here the search was not 'too remote in time or place to have been made as incidental to the arrest' (*Preston* v. *United States, supra,* at p. 368).

"In the case before us, the police conducted their search at the *place* of arrest, i.e., in front of the police station, at a *time* virtually contemporaneous to that of arrest. Viewing the matter realistically, we conclude that the officers, in taking defendant a few steps away to the interior of the police station, acted as reasonably as if they had ordered him to stand in front of his car while they conducted their search. Since the latter course would clearly be incidental to an arrest, the procedure actually employed must as its equivalent be accorded the same legal effect. (See *People* v. *Burke, supra,* 61 Cal.2d 575, in which the court held *inter alia* that a search of the interior of an automobile at the time and place of arrest constituted reasonable procedure when incident to a lawful arrest.)

"In *Preston,* the Supreme Court of the United States found the search of defendant's car unreasonable because it was not undertaken immediately after the arrest. Such search was not incidental to the arrest because the police officers delayed making it until after they had placed the vehicle in a police garage. 'At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. . . .' (*Preston*

v. *United States, supra,* 376 U.S. 364, 368.) In the instant case, however, no such delay occurred." (*People* v. *Robinson,* 62 Cal.2d 889, pp. 894-895 [44 Cal.Rptr. 762, 402 P.2d 834].)

In *People* v. *Loomis,* 231 Cal.App.2d 594 [42 Cal.Rptr. 124], the defendant was arrested for possessing a switchblade knife. At that time the officers had reasonable cause to believe that he was engaged in pimping. His car which was four car lengths away was searched and the search revealed a gun. The search was held to be reasonable, one officer having testified that the purpose of the search was to discover the suspected existence of books relating to the suspected pimping activities of defendant.

Defendant makes much of the fact that the search of the interior of the car did not reveal anything and that the officers had no cause to believe that any marijuana cigarette he may have smoked had found its way into the trunk. ■ We see no limitation in the cases limiting the permissible search to that portion of the automobile immediately accessible to the arrestee just before the arrest. In *People* v. *Burke, supra,* the articles seized were also found in the locked trunk of the automobile, yet there is nothing in the opinion to indicate that this in any way determined the result. The reason why the search was illegal was said to be because it was "too remote in time and place."

■ Further, assuming with defendant that by no stretch of the imagination could the stub of the marijuana cigarette which the officers suspected him of having smoked in the car have found its way into the trunk, the search of the trunk was reasonable in that it might disclose evidence of the crime. Thus for example at the preliminary hearing counsel for defendant suggested throughout that there were other substances whose . smell closely resembled that of marijuana. Finding marijuana in the trunk would indicate that defendant had not been burning rope in the car—one of the suggestions.

Finally it is contended that under no circumstances was there reasonable cause to bind defendant over on possession of marijuana for sale. The question is whether the quantity alone and defendant's admission hereinafter quoted can "lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion" that defendant possessed the narcotic for the purpose of sale. (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) No case has been found which is directly in point.

After defendant was arrested and advised of his constitutional rights he first denied knowing anything about the narcotics. Thereafter, at the station, he said that he was not going to tell anything, that the stuff belonged to him. "It *took* [*sic*] him about seven weeks to smoke all of this and that he was going to take the rap himself."

It seems obvious that the above quotation from the transcript represents an error somewhere along the line. Defendant could not have said that it had taken him seven weeks to smoke marijuana which was still unsmoked. Out of an excess of caution we will not try to substitute our opinion of what defendant probably said, for what the record shows.

█ We are thus left with the quantity alone. In our opinion the magistrate was amply justified in harboring a strong suspicion that defendant did not possess such a quantity for any purpose other than sale. She was entitled to take into account that 243 grams is the equivalent of slightly more than half a pound. Any human being who has ever held a pack of cigarettes in his hand, knows that half a pound of tobacco yields a very large number of smokes.

We carefully refrain from expressing any opinion on whether the evidence placed before the magistrate would be sufficient to convict defendant of possession for sale.

We have also refrained from relying on the information which the arresting officer had received from a fellow officer. There is nothing in the record to show that the fellow officer furnished the information on personal knowledge or on the basis of information furnished by a reliable informer. (cf. *United States* v. *Ventresca,* 380 U.S. 102, 111 [85 S.Ct. 741, 13 L.Ed.2d 684]; *People* v. *Lindogan,* 212 Cal.App.2d 466, 470 [27 Cal.Rptr. 905].)

The order is reversed.

Shinn, P. J., and Ford, J., concurred.