[No. S095872. Mar. 17, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK BARNUM, Defendant and Appellant.

## COUNSEL

Fern M. Laethem and Lynne S. Coffin, State Public Defenders, Jeffrey J. Gale, Acting State Public Defender, under appointments by the Supreme Court, John Fresquez, Assistant State Public Defender, Arnold Erickson, Alison Pease and David S. Adams, Deputy State Public Defenders, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Robert R. Anderson and Jo Graves, Assistant Attorneys General, Margaret Venturi, Michael A. Canzoneri, David A. Eldridge and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—We granted review to consider a rule, rooted in two Court of Appeal decisions—*Killpatrick v. Superior Court* (1957) 153 Cal.App.2d 146 [314 P.2d 164] (*Killpatrick*), and *People v. Kramer* (1964) 227 Cal.App.2d 199 [38 Cal.Rptr. 487] (*Kramer*)—declaring that a trial court is required to advise a defendant who represents himself or herself of the privilege against compelled self-incrimination before such a defendant is called by the People as a witness in their case-in-chief or testifies in his or her own defense.

The Court of Appeal below rejected the *Killpatrick-Kramer* rule, reasoning that it was not well founded, and in any event was not viable after *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*), which held that under the Sixth Amendment to the United States Constitution a defendant not only has a right to the assistance of counsel, but also the right to represent himself or herself.

We granted review to determine whether the *Killpatrick-Kramer* rule is valid and, if so, what standard of prejudice applies when it is violated.

As we shall explain, we conclude that the *Killpatrick-Kramer* rule has not been undermined by *Faretta*. Whereas *Faretta* is based on the United States Constitution alone, the *Killpatrick-Kramer* rule largely arises out of California law. Although *Faretta* does not require a trial court to advise a self-represented defendant of the privilege against compelled self-incrimination, neither does it prohibit such an advisement.

Nonetheless, we conclude that the *Killpatrick-Kramer* rule is unsound. That rule does not have any counterpart in the federal courts or in the courts of the vast majority of our sister states. The general rule is that a trial court ordinarily is not required to give any advisement to a self-represented defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel. The *Killpatrick-Kramer* rule has existed for many years as a lone exception to this general rule of no mandatory advisement, requiring a trial court to advise such a defendant of the privilege against compelled self-incrimination, but of no other right, no matter how important. Justification for singling out this privilege alone for such differential treatment never has been clear, and, upon full consideration, simply cannot be discerned. Indeed, since *Faretta*, the trial court has been required to make a defendant seeking to represent himself or herself aware of the dangers and disadvantages of self-representation, which include the defendant's inability to rely upon the trial court to

give personal instruction on courtroom procedure or to provide the assistance that otherwise would have been rendered by counsel. Thus, a defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance, and cannot compel the trial court to make up for counsel's absence.

For all of these reasons, we reject the *Killpatrick-Kramer* rule. We therefore need not address the standard of prejudice for its violation.

Accordingly, we conclude that we should affirm the judgment of the Court of Appeal.

I

The People charged defendant Mark Barnum, an inmate at High Desert State Prison in Lassen County, with battery on a noninmate (Pen. Code, § 4501.5) and obstruction of an executive officer (*id.*, § 69). The People further alleged that defendant had suffered four prior felony convictions for second degree robbery (*id.*, §§ 211, 212.5), thus triggering possible punishment under the "Three Strikes" law (*id.*, § 667, subds. (b)-(i); see *id.*, §§ 667.5, subd. (c), 1192.7, subd. (c)). Because the trial court found defendant indigent, it appointed counsel. Defendant pleaded not guilty to the charges and denied the allegations.

During jury selection, defendant made a motion, pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], asking the trial court to relieve appointed counsel and to substitute other counsel. After a hearing in chambers, the trial court denied defendant's motion. Relying in effect on *Faretta*, defendant then made a motion seeking to represent himself. During the pendency of his *Faretta* motion, defendant renewed his *Marsden* motion. After a hearing in chambers, the trial court denied defendant's renewed *Marsden* motion. Then, after a hearing in open court, and in spite of its "high suspicion" that defendant's "effort in this case has been solely to delay and to obstruct this trial," the trial court granted defendant's *Faretta* motion, having determined that he knowingly, intelligently, and voluntarily chose to forgo the assistance of counsel. Making plain the dangers and disadvantages of self-representation, the trial court warned defendant that it was "not going to be able to assist [him] or advise [him] on matters of law, evidence, or trial practice." Defendant acknowledged the trial court's warning, responding, "That is true," and nevertheless chose to continue to seek to represent himself. The trial court relieved appointed counsel, whom it then appointed as standby counsel.

According to the evidence presented by the People in their case-in-chief, the events that led to the charges in this case developed as follows: After dinner on July 19, 1997, Correctional Officers John Cartier and Richard Eubanks decided to search the cell shared by defendant and John Hendricks in one of the buildings at High Desert State Prison. Cartier and Eubanks recently had been assigned to the building, and had determined to put matters in order following what they took to be the somewhat lax procedures of their predecessors. Because defendant had a reputation as a hothead, Cartier and Eubanks called Correctional Officer Lorenzo Abella from another building to provide assistance if needed. Cartier and Eubanks removed defendant and Hendricks from their cell. Words were exchanged about Cartier's and Eubanks's handling of defendant's and Hendricks's property. As Cartier and Abella attempted to escort defendant and Hendricks to an area where they could be secured for the duration of the cell search, defendant confronted Cartier, Cartier placed his hand on defendant's chest to keep him at bay, defendant slapped Cartier's hand away, a fight ensued between Cartier and defendant with Abella and Hendricks joining in, and order quickly was restored as Eubanks incapacitated defendant and Hendricks with pepper spray.

In his defense, defendant presented a different version of the encounter and of the events leading up to it. Defendant testified on his own behalf, without advisement by the trial court of his privilege against compelled self-incrimination. In direct examination in the form of narrative, defendant described an incident at dinner on the day in question: Along with other inmates, defendant and Hendricks were engaged in a discussion about the late rap music artist Tupac Shakur. Cartier interjected that Shakur was "six feet deep" where he belonged, and Hendricks replied that John Wayne was "six feet deep" where *he* belonged. Not long thereafter, as Eubanks and Abella attempted to bring dinner to an end and met with resistance, Eubanks said, "We'll be up . . . to your cell. We will see how tough you are." When Cartier and Eubanks arrived, Cartier confronted defendant and pushed him hard, and defendant responded in self-defense. On cross-examination, the prosecutor sought to impeach defendant by probing into the events in question and by obtaining an admission that he had suffered the four prior felony convictions alleged against him. Defendant also called a number of inmates whose testimony largely supported his, including Hendricks, who had pleaded guilty to similar charges arising out of the same events. In addition, defendant called Sergeant Richard Berry, who testified that Cartier, Eubanks, and Abella failed to follow proper procedures in conducting the cell search.

In rebuttal, the People called defendant as a witness, again without advisement by the trial court of his privilege against compelled self-incrimination, and defendant took the stand. The prosecutor sought to impeach

defendant by probing into prior incidents involving correctional officers at another prison. In narrative form, defendant gave his own version of what had happened in the course of those incidents.

After deliberations, the jury returned verdicts finding defendant guilty of battery on a noninmate and obstruction of an executive officer, and made findings that he had suffered four prior felony convictions. In doing so, however, the jury delivered the following note: "We, the Jury, believe that [defendant] is guilty on both counts. However, we also believe that the events were precipated [*sic*] by improper handling of preceeding [*sic*] events and could have been prevented by the following of proper established protocols."

After reappointing counsel with defendant's consent, the trial court rendered judgment in accordance with the jury's verdicts and findings. Under the Three Strikes law, defendant was sentenced to a term of imprisonment of 25 years to life on the charge of battery on a noninmate. Defendant received the same sentence on the charge of obstruction of an executive officer, but execution of the sentence was stayed pending successful completion of the sentence on the battery charge, the stay to become permanent thereafter (Pen. Code, § 654).

The Court of Appeal affirmed. It rejected the *Killpatrick-Kramer* rule, reasoning that it was not well founded and, in any event, no longer was viable after *Faretta*. It found that defendant had testified freely in his own defense and had taken the stand when called by the People in their rebuttal. Finally, it concluded that any violation of the *Killpatrick-Kramer* rule in this case did not require reversal, but was harmless beyond a reasonable doubt.

We granted defendant's petition for review. In doing so, we limited the issues to whether the *Killpatrick-Kramer* rule is valid and, if so, what standard of prejudice applies when it is violated. Because, as we shall explain, we reject the *Killpatrick-Kramer* rule, we need not consider the standard of prejudice.

## II

The *Killpatrick-Kramer* rule requires a trial court to advise a self-represented defendant of the privilege against compelled self-incrimination before he or she is called by the People as a witness in their case-in-chief or testifies in his or her own defense.

In *Killpatrick*, the Court of Appeal, on certiorari in a consolidated proceeding, annulled certain judgments of the trial court adjudging each of the

defendants guilty of contempt of court for willfully failing to comply with a prior order for the support of his respective former wife and children. In each case, the defendant represented himself because he did not have counsel. The People called the defendant as a witness in their case-in-chief (*Killpatrick, supra*, 153 Cal.App.2d at p. 148), and the trial court "requir[ed]" the defendant to comply (*id.* at p. 150). Both the prosecutor and the trial court proceeded to question the defendant. At no time did the trial court advise the defendant of his privilege against compelled self-incrimination. The Court of Appeal held that the trial court's omission was error, and that the error was reversible.

In *Kramer*, the Court of Appeal reversed a judgment of the trial court convicting the defendant of forgery. The defendant represented himself out of choice. After the People presented their case-in-chief, the trial court invited the defendant to testify in his own defense if he wished, but did not advise him of his privilege against compelled self-incrimination. (*Kramer, supra*, 227 Cal.App.2d at pp. 200-201.) Following *Killpatrick*, the Court of Appeal held that the trial court's omission was erroneous and mandated reversal of the defendant's conviction.

Originally, the *Killpatrick-Kramer* rule was based mainly in the privilege against compelled self-incrimination under what are now section 15 of article I of the California Constitution and section 930 of the Evidence Code. (See *Killpatrick, supra*, 153 Cal.App.2d at p. 148; *Kramer, supra*, 227 Cal.App.2d at p. 200.) Soon the rule was expanded to reach the analogous privilege under the Fifth Amendment to the United States Constitution. (See *People v. Glaser* (1965) 238 Cal.App.2d 819, 828-829 [48 Cal.Rptr. 427].) This expansion of the rule coincided with the decision in *Malloy v. Hogan* (1964) 378 U.S. 1, 3, 6 [84 S.Ct. 1489, 1490-1491, 1492-1493, 12 L.Ed.2d 653], in which the United States Supreme Court held that the privilege under the Fifth Amendment was applicable to the states through the due process clause of the Fourteenth Amendment.

■ The *Killpatrick-Kramer* rule, of course, does not itself embody the privilege against compelled self-incrimination; rather, in purpose and effect it is a prophylactic measure. (See *People v. Glaser, supra*, 238 Cal.App.2d at p. 831; see generally *Killpatrick, supra*, 153 Cal.App.2d at pp. 149-150; *Kramer, supra*, 227 Cal.App.2d at pp. 201-203.) It is a judge-made "rule of procedure which requires notice to [a self-represented] defendant so as to protect and implement" the privilege. (*People v. Glaser, supra*, 238 Cal.App.2d at p. 831.)

The *Killpatrick-Kramer* rule thus finds its rationale in protection, based on a recognition that a self-represented defendant, unlike a defendant represented by counsel, does not have counsel available to protect his or her

privilege against compelled self-incrimination. The *Killpatrick-Kramer* rule places the responsibility upon the trial court to provide such protection by requiring the court to give an advisement of the privilege. In this regard, the court in *Killpatrick* reasoned: "The privilege cannot be made truly effective unless the defendant in a criminal case who is not represented by counsel is advised by the court of the existence of the privilege whenever such advice appears to be necessary. [Citations.] . . . 'When a defendant goes to trial upon a charge of a criminal nature without the benefit of counsel, it is the duty of the court to be alert to protect the defendant's rights. . . .' " (*Killpatrick, supra*, 153 Cal.App.2d at pp. 149-150; accord, *Kramer, supra*, 227 Cal.App.2d at pp. 202-203.) "It is axiomatic that a person may waive the privilege against self-incrimination. But any such waiver 'must be informed and intelligent. There can be no waiver if the defendants do not know their rights.' " (*Killpatrick, supra*, 153 Cal.App.2d at p. 150; accord, *Kramer, supra*, 227 Cal.App.2d at p. 202.) " 'The defendant may not be called to the stand in a criminal case unless he waives his privilege. He cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it.' " (*Killpatrick, supra*, 153 Cal.App.2d at p. 150; accord, *Kramer, supra*, 227 Cal.App.2d at p. 203.)

In numerous decisions, over a period of almost 30 years, lower courts in California have adhered to, or at least have not departed from, the *Killpatrick-Kramer* rule.[1] Even though it has been described as "well-established" (*People v. Jones, supra*, 2 Cal.App.4th at p. 872; accord, *People v. Torres, supra*, 133 Cal.App.3d at p. 280) and "settled" (*People v. Doane, supra*, 200 Cal.App.3d at p. 866) in California, the *Killpatrick-Kramer* rule does not have any counterpart in the federal courts or in the courts of about 45 of our 49 sister states. (See generally Annot., Duty of Court to Inform

---

[1]See *People v. Jones* (1992) 2 Cal.App.4th 867, 872-874 [3 Cal.Rptr.2d 602]; *People v. Doane* (1988) 200 Cal.App.3d 852, 866-868 [246 Cal.Rptr. 366]; *People v. Torres* (1982) 133 Cal.App.3d 265, 280-281 [184 Cal.Rptr. 39]; *People v. Longwith* (1981) 125 Cal.App.3d 400, 412-413 [178 Cal.Rptr. 136]; *People v. Cundle* (1979) 98 Cal.App.3d Supp. 34, 35-37 [159 Cal.Rptr. 806]; *People v. Jackson* (1978) 88 Cal.App.3d 490, 497-498 [151 Cal.Rptr. 688]; *People v. Cervantes* (1978) 87 Cal.App.3d 281, 284, 288-289 [150 Cal.Rptr. 819]; *People v. Solomos* (1978) 83 Cal.App.3d 945, 952-955 [148 Cal.Rptr. 248]; *People v. Wells* (1968) 261 Cal.App.2d 468, 480-482 [68 Cal.Rptr. 400]; *People v. Glaser, supra*, 238 Cal.App.2d at pages 828-829 and 831; see also *People v. Pretzer* (1992) 9 Cal.App.4th 1078, 1085 [11 Cal.Rptr.2d 860], disapproved on another point by *People v. Anzalone* (1999) 19 Cal.4th 1074, 1083 [81 Cal.Rptr.2d 315, 969 P.2d 160]; *People v. Vargas* (1987) 195 Cal.App.3d 1385, 1391-1392 [241 Cal.Rptr. 360]; *People v. Owens* (1977) 66 Cal.App.3d 720, 722-724 [136 Cal.Rptr. 215]; *People v. Thomas* (1974) 43 Cal.App.3d 862, 866-868 [118 Cal.Rptr. 226]; *People v. Barker* (1965) 232 Cal.App.2d 178, 182 [42 Cal.Rptr. 651]; see generally 5 Witkin and Epstein, California Criminal Law (3d ed. 2000) Criminal Trial, section 259, page 401; California Judges Benchbook: Criminal Pretrial Proceedings (CJER 1991) Commencing the Action, section 1.45, page 48; *id.* (1999 supp.) section 1.45, page 131.

Accused Who Is Not Represented by Counsel of His Right Not to Testify (1961) 79 A.L.R.2d 643, 643-646, and later cases (2000 supp.) pp. 182-185, and later case service (2002 supp.) p. 4 [listing no more than four other states with a similar rule]; see also 3 LaFave et al., Criminal Procedure (2d ed. 1999) § 11(e), p. 586, fn. 77; Annot., Accused's Right to Represent Himself in State Criminal Proceeding—Modern State Cases (1980) 98 A.L.R.3d 13, 83-85, § 21; cf. 8 Wigmore, Evidence (McNaughton ed. 1961) § 2269, p. 413 [criticizing any "technical rule" requiring trial courts to advise witnesses of the privilege against compelled self-incrimination]; but cf. *People v. Berry* (1991) 230 Cal.App.3d 1449, 1453 [281 Cal.Rptr. 543] [supporting such a rule in dictum].) Indeed, in *Powers v. United States* (1912) 223 U.S. 303 [32 S.Ct. 281, 56 L.Ed. 448] (*Powers*), the United States Supreme Court implied that a trial court is not required to advise a self-represented defendant of the privilege against compelled self-incrimination under the Fifth Amendment, at least not before such a defendant testifies in his or her own defense. (See *Powers*, at p. 313 [32 S.Ct. at p. 283] [speaking in the context of a preliminary hearing].) Hence, although not unique to this state, the *Killpatrick-Kramer* rule has little support elsewhere.

In *People v. Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321] (*Redmond*), we acknowledged the existence of the *Killpatrick-Kramer* rule as an exception (*Redmond, supra,* 71 Cal.2d at p. 758, fn. 3) to the general rule that "the judge ordinarily is not required to assist or advise" a "defendant who chooses to represent himself" "on matters of law, evidence or trial practice" (*id.* at p. 758), but neither in *Redmond* nor in any other decision prior to the present one have we had the occasion to pass upon the validity of the *Killpatrick-Kramer* rule.

The Court of Appeal below rejected the *Killpatrick-Kramer* rule. It reasoned that the rule was not well founded, and in any event was not viable after *Faretta*. We shall consider each point in turn, beginning with *Faretta*.

■ We do not believe that the *Killpatrick-Kramer* rule has been undermined by *Faretta*.

To be sure, *Faretta* does not require a trial court to treat a self-represented defendant differently from a defendant represented by counsel but, quite to the contrary, allows similar treatment. Specifically, *Faretta* holds that, under the Sixth Amendment, a defendant has a right to the assistance of counsel and also a right to represent himself or herself, and may do so after knowingly, intelligently, and voluntarily choosing to forgo the assistance of counsel. (*Faretta, supra,* 422 U.S. at pp. 812-835 [95 S.Ct. at pp. 2529-2541].) The trial court must make a defendant seeking to represent himself

or herself "aware of the dangers and disadvantages of self-representation" (*Faretta, supra*, 422 U.S. at p. 835 [95 S.Ct. at p. 2541]), which include the circumstance that such a defendant cannot rely upon the trial court to provide "personal instruction . . . on courtroom procedure" or "to take over chores . . . that would normally be attended to by trained counsel as a matter of course" (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 183-184 [104 S.Ct. 944, 953-954, 79 L.Ed.2d 122]). A defendant who thus chooses self-representation necessarily forgoes counsel's assistance together with the protection that counsel might have provided (see *Faretta, supra*, 422 U.S. at p. 835 [95 S.Ct. at p. 2541]), which extends to advisement of the privilege against compelled self-incrimination (see, e.g., 3 Wharton's Criminal Procedure (13th ed. 1991) § 350, p. 118 [discussing the privilege under the Fifth Amendment]; *People v. Vargas, supra*, 195 Cal.App.3d at pp. 1391-1392 [same]; *People v. Longwith, supra*, 125 Cal.App.3d at p. 412 [same]; *People v. Thomas, supra*, 43 Cal.App.3d at p. 867 [same]; *State v. Bogus* (1988) 223 N.J.Super. 409, 425-426 [538 A.2d 1278, 1287] [same, collecting cases]). Nevertheless, the defendant's choice of self-representation "must be honored out of 'that respect for the individual which is the lifeblood of the law.' " (*Faretta, supra*, 422 U.S. at p. 834 [95 S.Ct. at p. 2541].)

Although *Faretta* does not require a trial court to advise a self-represented defendant of the privilege against compelled self-incrimination, neither does it prohibit such an advisement. Whereas *Faretta* is based on the federal Constitution alone, the *Killpatrick-Kramer* rule largely arises out of state law. The Court of Appeal termed the *Killpatrick-Kramer* rule "paternalistic . . . and, hence, anti-*Faretta*." We think that this comment reads into *Faretta* what is not there. *Faretta* allows a defendant to stand unprotected by counsel, but does not bar assistance from the trial court. The Court of Appeal recognized as much, conceding that its rejection of the *Killpatrick-Kramer* rule did not "preclude a trial court from offering assistance . . . ."

Even though the *Killpatrick-Kramer* rule is not undermined by *Faretta*, we nonetheless believe that the rule, viewed on its own merits, is unsound. As we declared in *Redmond*, it is a principle deeply rooted in the law that a "defendant who chooses to represent himself assumes the responsibilities inherent in the role which he has undertaken," and "is not entitled to special privileges not given an attorney . . . ." (*Redmond, supra*, 71 Cal.2d at p. 758; accord, *People v. Smith* (1985) 38 Cal.3d 945, 957 [216 Cal.Rptr. 98, 702 P.2d 180]; see, e.g., *People v. Jenkins* (2000) 22 Cal.4th 900, 1039 [95 Cal.Rptr.2d 377, 997 P.2d 1044]; *People v. Noah* (1971) 5 Cal.3d 469, 479 [96 Cal.Rptr. 441, 487 P.2d 1009]; *People v. Williams* (1970) 2 Cal.3d 894, 909-910 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People v. Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834];

*People v. Ashley* (1963) 59 Cal.2d 339, 364 [29 Cal.Rptr. 16, 379 P.2d 496]; *People v. Mattson* (1959) 51 Cal.2d 777, 794 [336 P.2d 937]; *People v. Chessman* (1951) 38 Cal.2d 166, 174 [238 P.2d 1001], disapproved on another point by *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *People v. Northcott* (1930) 209 Cal. 639, 648-651 [289 P. 634, 70 A.L.R. 806]; see generally 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 259, pp. 399-400.)

It is from this principle that the general rule we spoke of in *Redmond* emerged, namely that "the judge ordinarily is not required to assist or advise" a "defendant who chooses to represent himself" "on matters of law, evidence or trial practice." (*Redmond, supra*, 71 Cal.2d at p. 758; accord, *People v. Smith, supra*, 38 Cal.3d at p. 957; see generally 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 260, p. 401.)

Any attempt to justify the *Killpatrick-Kramer* rule—by a broad assertion that a self-represented defendant needs the trial court's protection—would falter on the principle stated above, which allows such a defendant to act on his or her own, but also requires such a defendant to act at his or her peril. In all but the most unusual cases, a self-represented defendant, who necessarily is without counsel's protection, could benefit by receiving protection from whatever source he or she might obtain it. But under the general rule we have cited, "the judge ordinarily is not required to assist or advise [such a defendant] on matters of law, evidence or trial practice." (*Redmond, supra*, 71 Cal.2d at p. 758.)

Thus, any justification for the *Killpatrick-Kramer* rule evidently must arise from the privilege against compelled self-incrimination itself and from any mandate contained therein requiring the trial court to protect a self-represented defendant.

Neither *Killpatrick* nor *Kramer*, nor any of their progeny, explains why the privilege against compelled self-incrimination, alone among the rights enjoyed by a self-represented defendant, mandates protection by the trial court. Nor do we find an adequate explanation from any other source.

We recognize that the privilege against compelled self-incrimination has been viewed as "fundamental." (E.g., *United States v. Verdugo-Urquidez* (1990) 494 U.S. 259, 264 [110 S.Ct. 1056, 1060, 108 L.Ed.2d 222] [speaking of the privilege under the Fifth Amendment]; *People v. Rizer* (1971) 5 Cal.3d 35, 37 [95 Cal.Rptr. 23, 484 P.2d 1367] [same]; see *People v. Edwards* (1991) 54 Cal.3d 787, 809 [1 Cal.Rptr.2d 696, 819 P.2d 436] [speaking of the privilege generally].) But other rights have been so ranked

as well. The right to compulsory process is a "fundamental" right. (*In re Martin* (1987) 44 Cal.3d 1, 29-30 [241 Cal.Rptr. 263, 744 P.2d 374] [speaking of the right under both the Sixth and Fourteenth Amendments to the United States Constitution, and article I, section 15 of the California Constitution]; *Washington v. Texas* (1967) 388 U.S. 14, 19 [87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019] [speaking of the right under the Sixth and Fourteenth Amendments only].) Another "fundamental" right is the right of confrontation. (*Pointer v. Texas* (1965) 380 U.S. 400, 405 [85 S.Ct. 1065, 1068-1069, 13 L.Ed.2d 923] [speaking of the right under the Sixth and Fourteenth Amendments]; *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1137 [99 Cal.Rptr.2d 149, 5 P.3d 203] [same].) Yet another "fundamental" right—and perhaps the most significant one for present purposes—is the right to testify. (*Rock v. Arkansas* (1987) 483 U.S. 44, 49-53 [107 S.Ct. 2704, 2707-2710, 97 L.Ed.2d 37] [speaking of the right under the Fourteenth Amendment's due process clause, the Sixth Amendment's compulsory process clause, and the Fifth Amendment's privilege against compelled self-incrimination]; *People v. Webb* (1993) 6 Cal.4th 494, 534-535 [24 Cal.Rptr.2d 779, 862 P.2d 779] [speaking generally of the right to testify]; *People v. Guzman* (1988) 45 Cal.3d 915, 962 [248 Cal.Rptr. 467, 755 P.2d 917], overruled on another point, *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13 [108 Cal.Rptr.2d 409, 25 P.3d 618] [same].)

No requirement has been imposed on the trial court to advise a self-represented defendant of any of these fundamental rights. Indeed, as stated above, in *Powers*, the United States Supreme Court implied that a trial court is not required to advise a self-represented defendant of the privilege against compelled self-incrimination insofar as it is based on the Fifth Amendment, at least not before such a defendant testifies in his or her own defense. Moreover, in *People v. Jones, supra*, 2 Cal.App.4th 867, 873, the Court of Appeal held, in our view correctly, that a trial court is not required to advise a self-represented defendant of the right to testify—a right that is the mirror image of the privilege against compelled self-incrimination and accordingly is of equal dignity. (See 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 260, p. 401.) If such a defendant may be allowed to exercise, or not to exercise, the right to testify, without advisement by the trial court, he or she likewise may be allowed to do the same with respect to the privilege against compelled self-incrimination.

 One further aspect of the rationale for the *Killpatrick-Kramer* rule merits discussion. This rule is premised on the assumption that, because a right like the privilege against compelled self-incrimination may be lost only by waiver, and because a waiver is effective only if it is knowing, intelligent, and voluntary, the effectiveness of a waiver is ensured only if the trial court gives an advisement of what is to be relinquished.

We do not find this assumption sufficient to support the *Killpatrick-Kramer* rule. First, by its terms, the assumption applies to *any* right, and hence does not explain why the privilege against compelled self-incrimination, alone among the rights afforded a self-represented defendant, should be singled out for differential treatment. Second, a defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance, and cannot rely upon the trial court to make up for counsel's absence. Third and finally, a right may be lost not only by waiver but also by forfeiture, that is, the failure to assert the right in timely fashion. (*Yakus v. United States* (1944) 321 U.S. 414, 444 [64 S.Ct. 660, 677, 88 L.Ed. 834] [stating that "[n]o procedural principle is more familiar . . . than that a . . . right," even a "constitutional right," "may be forfeited"]; accord, *United States v. Olano* (1993) 507 U.S. 725, 731 [113 S.Ct. 1770, 1776, 123 L.Ed.2d 508]; *People v. Collins* (2001) 26 Cal.4th 297, 305, fn. 2 [109 Cal.Rptr.2d 836, 27 P.3d 726]; *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598].) As abundant authority attests, the rights subject to forfeiture as well as waiver include the privilege against compelled self-incrimination (see *Brown v. United States* (1958) 356 U.S. 148, 155-156 [78 S.Ct. 622, 626-627, 2 L.Ed.2d 589, 72 A.L.R.2d 818] [speaking of the privilege under the Fifth Amendment]; *People v. Hendricks* (1987) 43 Cal.3d 584, 592-594 [238 Cal.Rptr. 66, 737 P.2d 1350] [same]; *People v. Ing* (1967) 65 Cal.2d 603, 610-611 [55 Cal.Rptr. 902, 422 P.2d 590] [speaking of the privilege under what is now section 15 of article I of the California Constitution as well as the Fifth Amendment]; see generally 5 LaFave et al., Criminal Procedure, *supra*, § 24.5(a), pp. 529-532 [speaking of the privilege under the Fifth Amendment]; 1 McCormick, Evidence (5th ed. 1999) §§ 129, 134, pp. 486-490, 497-499 [same])—and, most significantly here, include the privilege against compelled self-incrimination *of the self-represented defendant* (see *Powers, supra*, 223 U.S. at p. 313 [32 S.Ct. at p. 283] [speaking of the privilege under the Fifth Amendment before such a defendant testifies in his or her own defense in the context of a preliminary hearing]).[2]

---

[2]Defendant's argument to the contrary is not persuasive. To support his assertion that, at least insofar as it is based on the Fifth Amendment, the privilege against compelled self-incrimination may not be forfeited, he relies upon the privilege's status as a fundamental right (*United States v. Verdugo-Urquidez, supra*, 494 U.S. at p. 264 [110 S.Ct. at p. 1060]). But in *Peretz v. United States* (1991) 501 U.S. 923 [111 S.Ct. 2661, 115 L.Ed.2d 808], the United States Supreme Court made clear that even a fundamental right, including the privilege in question, may be forfeited. (*Id.* at pp. 936-937 [111 S.Ct. at p. 2669].) *Peretz* cites with approval *United States v. Coleman* (9th Cir. 1983) 707 F.2d 374, a case in which the United States Court of Appeals for the Ninth Circuit held the privilege to have been forfeited by failure to object to certain statutory firearm registration requirements that assertedly compelled self-incriminatory responses. It is true that *Peretz* summarizes *Coleman* as holding that

Although the *Killpatrick-Kramer* rule is unsound, we acknowledge that it has enjoyed widespread and long-standing following among the lower courts in California, and that its retention therefore is supported by the policy favoring stability in the law.

Against the policy of stability, however, we must recognize that the *Killpatrick-Kramer* rule is not itself the privilege against compelled self-incrimination. Instead, it merely is a judge-made, prophylactic rule of procedure. We also must recognize that the *Killpatrick-Kramer* rule does not have any counterpart in the federal courts or in the courts of the vast majority of our sister states. Indeed, such a rule has been considered and rejected expressly in decisions such as *State v. Lo Sacco* (1987) 12 Conn.App. 481 [531 A.2d 184] and *State v. Poindexter* (1984) 69 N.C.App. 691 [318 S.E.2d 329]. In *Poindexter,* the court stated that the privilege against compelled self-incrimination "says no more than a person shall not be *compelled* to speak. It does not place upon the trial court the duty of informing a *pro se* defendant of his [or her] rights and privileges. In fact, . . . a defendant who knowingly and intelligently elects to proceed *pro se,* 'cannot expect the trial judge to relinquish his [or her] role as impartial arbiter in exchange for the dual capacity of judge and guardian angel of defendant.' . . . [A] defendant who chooses to proceed *pro se* 'does so at his [or her] peril and acquires as a matter of right no greater privilege or latitude than would an attorney acting for him [or her].' " (*State v. Poindexter, supra,* 69 N.C.App. at p. 694 [318 S.E.2d at p. 331], italics in original [speaking of the privilege under the Fifth Amendment].) The court in *Lo Sacco,* although opining that "it is sound judicial practice to advise a pro se defendant" of the privilege, likewise expressed its "unwilling[ness] to impose upon the trial court the burden of" giving such an advisement. (*State v. Lo Sacco, supra,* 12 Conn.App. at p. 492 [531 A.2d at p. 190].)

For all of these reasons, we conclude that the *Killpatrick-Kramer* rule is invalid, and hereby reject it.

 Because adherence to the *Killpatrick-Kramer* rule has been widespread among the lower courts and long-standing, however, the question arises whether we should apply our holding to the present case and to any

the "failure to object constitutes *waiver* of" the privilege. (*Peretz v. United States, supra,* 501 U.S. at p. 936 [111 S.Ct. at p. 2669], italics added.) But, manifestly, *Peretz* uses the term "waiver" loosely for "forfeiture." As noted, *Peretz* finds "waiver" in a mere "failure to object," as opposed to a knowing, intelligent, and voluntary relinquishment. (*Ibid.*) Moreover, *Peretz* adds almost immediately that " '[n]o procedural principle is more familiar . . . than that a [federal] constitutional right may be *forfeited* . . . .' " (*Id.* at p. 936 [111 S.Ct. at p. 2669], quoting *Yakus v. United States, supra,* 321 U.S. at p. 444 [64 S.Ct. at p. 677], italics added.)

other case not yet final on appeal or review. We conclude that we should do so. As we have explained, since *Faretta* trial courts have been required to make defendants seeking to represent themselves aware of the dangers and disadvantages of self-representation, which include the defendant's inability to rely upon the trial court to provide personal instruction on courtroom procedure or to provide the assistance that otherwise would have been rendered by counsel. Thus, a defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance, and cannot compel the trial court to make up for counsel's absence. Such a defendant therefore cannot reasonably expect the trial court to provide an advisement of any right, including the privilege against compelled self-incrimination.

█ Of course, in disapproving the *Killpatrick-Kramer* rule, we simply hold that a trial court is not *required* to advise a self-represented defendant of the privilege against compelled self-incrimination. In any given case, the court remains free to provide such an advisement, so long as its words do not stray from neutrality toward favoring any one option over another. A trial court of course must proceed carefully in providing an advisement, but it may provide one if it deems it appropriate. (See *Redmond, supra,* 71 Cal.2d at pp. 758-759.)

## III

█ Turning now to the case at bar, we conclude that the Court of Appeal properly affirmed the judgment of the trial court.

As we have explained in disapproving the *Killpatrick-Kramer* rule, although the trial court was not precluded from advising defendant, who represented himself, of his privilege against compelled self-incrimination before he testified in his own defense or took the stand when called by the People in their rebuttal, it nevertheless was not required to provide him with any such advisement. Prior to granting defendant's *Faretta* motion, the trial court warned defendant that it was "not going to be able to assist [him] or advise [him] on matters of law, evidence, or trial practice," and defendant acknowledged the warning, responding, "That is true." As a result, defendant could not reasonably have expected the trial court to advise him of any of his rights, including his privilege against compelled self-incrimination.

Having noted the absence of any advisement by the trial court as to defendant's privilege against compelled self-incrimination, and the absence of any indication that standby counsel may have offered such an advisement, the Court of Appeal concluded that defendant acted freely both in testifying

in his own defense and in taking the stand when called by the People in their rebuttal.

After review of the record before us, we agree. Defendant made absolutely no objection to testifying, and indeed betrayed not the least hesitation. We therefore cannot find any compulsion, either in law or in fact, in his action.[3]

Because we conclude that the trial court did not err in failing to advise defendant of the privilege against compelled self-incrimination, we need not consider whether any error would have required reversal.[4]

---

[3]Clearly, by testifying in his own defense, defendant relinquished his privilege against compelled self-incrimination with respect to cross-examination on matters within the scope of the narrative testimony he provided on direct examination, as well as on matters that impeached his credibility as a witness. (*People v. Stanfill* (1986) 184 Cal.App.3d 577, 581 [229 Cal.Rptr. 215]; *People v. James* (1976) 56 Cal.App.3d 876, 887-888 [128 Cal.Rptr. 733]; see *People v. Gallagher* (1893) 100 Cal. 466, 475 [35 P. 80]; see also *People v. Schader* (1969) 71 Cal.2d 761, 771 [80 Cal.Rptr. 1, 457 P.2d 841]; see generally 2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 428, p. 730.) That is true even though defendant represented himself. (See *Powers, supra,* 223 U.S. at p. 314 [32 S.Ct. at pp. 283-284] [speaking of the privilege under the Fifth Amendment in the context of a preliminary hearing].) We are satisfied from our examination of the record that the permissibly wide scope of cross-examination was not exceeded by the prosecutor's probing into the incident involving Correctional Officers Cartier, Eubanks, and Abella at High Desert State Prison, or by the prosecutor's obtaining an admission that defendant had suffered four prior felony convictions.

It is true that the People called defendant as a witness in their rebuttal. But in the People's rebuttal, the prosecutor, in effect, merely subjected defendant to reopened cross-examination (see Evid. Code, §§ 761, 778) or recross-examination (see *id.,* § 763; Cal. Law Revision Com. com, 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 763, p. 389), doing little more than what he properly did on the initial cross-examination of defendant in the course of the defense, which was to impeach defendant's credibility by probing into prior incidents involving correctional officers at another prison. We recognize that a "defendant in a criminal action . . . may not . . . be examined under direct examination by another party" "without his [or her] consent." (Evid. Code, § 772, subd. (d); see *id.,* § 776, subd. (a) [providing that "[a] party to the record *of any civil action* . . . may be called and examined as if under cross-examination by any adverse party at any time during the presentation of evidence by the party calling the witness" (italics added)].) We find such consent implied, if not expressed, in this case.

[4]The issues on which we granted review in this case do not include the question whether a prosecutor would commit misconduct in violation of a defendant's privilege against compelled self-incrimination under the Fifth Amendment by calling the defendant as a witness in the People's *case-in-chief.* In the present case, the prosecutor did not call defendant as a witness in the People's case-in-chief, but only in their rebuttal, and then only for what in effect was reopened cross-examination or recross-examination (see, *ante,* at this page, fn. 3). We therefore leave this question of potential prosecutorial misconduct to a case in which it is presented. (See *Patty v. Bordenkircher* (6th Cir. 1979) 603 F.2d 587, 588-589 [holding that "where the prosecutor . . . call[s] a criminal defendant to the stand in order to prove an element of the crime," the prosecutor "violates the [defendant's] privilege against self-incrimination" under the Fifth Amendment].)

## IV

For the reasons stated above, we affirm the judgment of the Court of Appeal.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.