Filed 5/26/23 P. v. Casey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C096175 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-177931) |
| v. | |
| MICHAEL PATRICK CASEY, | |
| Defendant and Appellant. | |

After defendant Michael Patrick Casey pled no contest to several offenses, including stalking the mother of his child while he was subject to a temporary restraining order, the trial court placed him on formal probation for four years, with a probation condition that, subject to a few exceptions, excluded defendant from the City of Roseville, where the mother of his child lives. On appeal, defendant contends the Roseville exclusion infringes his right to intrastate travel. We agree with the People that this claim is forfeited on appeal. Accordingly, we affirm.

1

BACKGROUND

The following summary of facts is based on the preliminary hearing transcript, which defendant stipulated provided a factual basis for his guilty plea.

In the fall of 2020, D.C. obtained a domestic violence restraining order against defendant that prohibited him from contacting her or coming within 100 yards of her, except during custody exchanges of their son. Nearly every day thereafter, defendant texted and called D.C. numerous times professing his love for her and asking why she was "doing this."

One day, D.C. saw defendant sitting in his car less than half a block from her home. D.C. also learned defendant was seen around her workplace. Frightened, D.C. contacted the police. Days later, defendant wrote in a text message to D.C. that she hurt him by obtaining the restraining order, and that he heard police banging at his door.

In December 2020, D.C. heard a noise in her backyard. She ran to her front yard and saw defendant's car parked there, within 100 yards of her home. She saw defendant run from behind her fence to his car.

In February 2021, during an exchange of their son, defendant jumped into the front passenger seat of D.C.'s car and refused to leave. Later that month, as D.C. was leaving her job at the end of the workday, she saw defendant standing in an elevator she was about to use. When she eventually got to her car, she saw that her front tire had been "popped."

Data on a tracking device that officers found in defendant's car in February 2021, showed that on multiple occasions, defendant drove from his home to D.C.'s office, to their son's school, and then to D.C.'s home in Roseville.

In January 2022, defendant pled no contest to several offenses, including felony stalking while being the subject of a temporary restraining order (Pen. Code, § 646.9, subd. (b)), in exchange for dismissal of a charge of first degree residential burglary and placement on formal probation. At that plea hearing, the parties and the trial court

2

discussed D.C.'s hope that defendant's probation include "one year GPS" and "no go zones." Defense counsel asked if "that could be subject to discussion at the sentencing hearing." The trial court agreed, saying: "Sounds like this could be worked out at sentencing. There's going to be a GPS requirement for a year. There are going to be certain areas that [defendant is] going to be precluded [from] going into, but the Court is going to hear what the needs are on both sides" at sentencing.

In February 2022, the trial court granted defendant's request to represent himself. Before it did so, the trial court warned defendant that, even though he had a bachelor's degree in philosophy, "representing yourself is almost always unwise. Even attorneys . . . charged with crimes get lawyers."

At the March 2022 hearing at which defendant was ultimately sentenced, the trial court first denied defendant's motion to withdraw his plea. In doing so, the trial court explained that defendant had not demonstrated that his prior attorney's conduct was deficient and that defendant also failed to show that but for any ineffective assistance of counsel he was prejudiced. Specifically, the trial court rejected defendant's position he would not have pled no contest if he knew he would be subject to electronic searches as a condition of probation. The trial court also explained that "if [it] were to sentence [defendant] to probation, [it] would find" an electronics search condition to be "a reasonable condition related to" defendant's criminal conduct, and "necessary to ensure probation compliance and" to "protect the victim."

Moving on to sentencing, the trial court first explained it would order defendant to wear a GPS monitor for one year. "But in terms of the locations, let's talk about that now," the trial court said. "Number 1, citywide exclusion from Roseville except for the probation check-ins and court hearings." "Previously I lived in Roseville," defendant replied. "I think that would fall under -- I don't believe that that should be allowed because you can't preclude someone from an entire city was my understanding. And I

3

lived in Roseville for 10 years. I've worked in the area. You know, my son, once I re-establish visitation, his school's in Roseville, family and friends are in Roseville."

The prosecutor explained D.C. wanted to "feel like she can go to these places in her immediate neighborhood without having to look over her shoulder every single moment of the day. She's concerned that she's a single mother living with her son that doesn't have a huge support system here and that he's going to violate that. And so what we're asking for is a larger cushion for her. He has no reason to be within the city limits. He does not live here, he does not work here."

Acknowledging that he was living with his mother outside Roseville city limits in neighboring Sacramento County, defendant insisted the Roseville exclusion condition was "a setup for failing at probation," in part because his "support system . . . the people that . . . helped [defendant] through this are very much in Roseville and Folsom."

At one point, the trial court wondered aloud whether a two-mile radius around D.C.'s house might be a sufficient exclusion zone, and defendant indicated he would be amenable to that condition. Ultimately, the trial court imposed the Roseville exclusion as a probation condition, "with the understanding that after three months" defendant could "come in and ask the Court to modify" that condition. "[I]f you file" such a motion, the trial court told defendant, "I'll want to see good compliance, and . . . no issues on probation. If you think you need to be in a certain area of Roseville, I want to know -- I want to know why, I want -- if there's [a] support system that you say that you have there, I want to know who that is."

"Okay," defendant replied.

The trial court continued: "I don't have that information in front of me in any event. That's something you can present."

When defendant asked later about traveling through highways within Roseville city limits, the trial court agreed to add that as an exception to the Roseville exclusion.

4

Accordingly, the trial court imposed a sentence of four years of formal probation, a condition of which was a "city-wide exclusion from Roseville, with the exception for probation check-ins, court hearings or if on" Interstate 80.

Defendant timely appealed.

## DISCUSSION

Defendant contends the probation condition barring him from entering Roseville is overbroad as applied to him because it infringes on his right to intrastate travel. We agree with the People that this claim is forfeited on appeal because defendant did not raise it at sentencing.

### A. *Fashioning a Probation Condition*

"A sentencing court has 'broad discretion' to fashion appropriate conditions of probation that facilitate rehabilitation and foster public safety." (*People v. Patton* (2019) 41 Cal.App.5th 934, 944.) Accordingly, a probation condition is valid unless it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct that is not in itself criminal, and (3) requires or forbids conduct that is not reasonably related to future criminality. All three of those prongs must be satisfied to render the condition invalid. (*Ibid.*)

But a probation condition that restricts the exercise of a constitutional right "*also must be narrowly drawn and specifically tailored to the individual probationer.*" (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084, italics added; see *In re White* (1979) 97 Cal.App.3d 141, 150 ["If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used"].)

### B. *Forfeiture*

Failure to object to a probation condition generally forfeits the claim on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235.) "A timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in

5

the particular case. . . . A rule foreclosing appellate review of claims not timely raised in this manner helps discourage the imposition of invalid probation conditions and reduce the number of costly appeals brought on that basis." (*Id*. at p. 235; see *In re Sheena K.* (2007) 40 Cal.4th 875, 885 [forfeiture rule "promotes greater procedural efficiency," because the trial court "is in a considerably better position than the Court of Appeal to review and modify a sentence option or probation condition that is premised upon the facts and circumstances of the individual case"].)

Of course, an objection must be specific enough to alert the trial court to the relevant potential error. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 636 [requiring an objection to the excusal of a juror in a capital case "on specific grounds" under *Witherspoon v. Illinois* (1968) 391 U.S. 510 and *Wainwright v. Witt* (1985) 469 U.S. 412 "in order to preserve the issue for appeal"].) But a defendant who failed to object to a probation condition at sentencing may challenge that condition on appeal if the claim "amount[s] to a 'facial challenge,' " a pure question of law that can be resolved without reference to the particular sentencing record developed in the trial court. (*In re Sheena K., supra*, 40 Cal.4th at p. 885.) Such a claim "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts." (*Ibid*.)

C.     *Right to Intrastate Travel*

The right of intrastate travel, " 'has been recognized as a basic human right protected by article I, sections 7 and 24 of the California Constitution.' [Citation.] Like all constitutional rights, the right to travel is subject to limits." (*People v. Moran* (2016) 1 Cal.5th 398, 405-406.) Limiting a probationer's freedom of movement as a condition of probation "is common, as probation officers' awareness of probationers' whereabouts facilitates supervision and rehabilitation and helps ensure probationers are complying with the terms of their conditional release. (See, e.g., *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 220 [probation condition prohibited defendant from leaving the state

6

without permission]; *People v. Vogel* (1956) 46 Cal.2d 798, 806 (dis. opn. of Shenk, J.) [same]; *People v. Cruz* (2011) 197 Cal.App.4th 1306, 1309 [probation condition prohibited defendant from leaving the county or state without permission].)" (*Id.* at p. 406.)

    D.    *Analysis*

Here, defendant concedes he is bringing an "as applied" challenge to the Roseville exclusion condition as infringing on his right to intrastate travel. Such a challenge is forfeited on appeal unless raised in the trial court. Defendant maintains he "preserved" this argument when he (1) told the trial court that his support system was in Roseville, (2) said "you can't preclude someone from an entire city was my understanding," and (3) appeared amenable to the notion of an exclusion zone of a two-mile radius from D.C.'s home. We disagree.

At sentencing, defendant did not mention a constitutional right to travel, or any other constitutional right. Had he done so, the trial court might have considered the potential constitutional error and modified the scope of the exclusion or explained why it is necessary in defendant's particular case. (*People v. Welch*, *supra*, 5 Cal.4th at p. 235; see *People v. Patton, supra*, 41 Cal.App.5th at p. 947 [the defendant's constitutional attack of a probation condition forfeited on appeal, because "had [the defendant] raised [the] constitutional challenge at sentencing, the court might have" conducted an inquiry pertinent to that challenge].)

The scope of any probation condition excluding defendant from specific geographic areas was one of multiple decisions the trial court had to make at the March 2022 hearing. It was incumbent on defendant to alert the trial court to the constitutional dimension of his objection to the Roseville exclusion probation condition. (Cf. *People v. de Soto* (1997) 54 Cal.App.4th 1, 9 [it is the defendant's "obligation to formulate specific objections," because when "making sentencing choices, the trial judge is confronted with a maze of statutes and rules, the intricacy of which rival the Internal Revenue Code"].)

7

Indeed, the record reflects the trial court's general openness to modifying the Roseville exclusion condition in light of defendant's desire to visit certain people in Roseville, if supported by specific information in defendant's possession. The trial court told defendant: "If you think you need to be in a certain area of Roseville, . . . if there's [a] support system that you say that you have there, I want to know who that is." "I don't have that information in front of me in any event. That's something you can present."

Defendant asks us to exercise our discretion to consider his forfeited claim, arguing the Roseville exclusion condition presents an important issue of constitutional law. We decline to do so. Defendant chose to represent himself though the trial court warned him that "representing yourself is almost always unwise." An attorney may have articulated at sentencing the constitutional claim defendant seeks to raise now. (Cf. *People v. Barnum* (2003) 29 Cal.4th 1210, 1224 ["defendant who chooses to represent himself . . . assumes the risk of his or her own ignorance," including the risk that a "right may be lost . . . by forfeiture"].) Accordingly, defendant's claim is forfeited on appeal.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
HULL, Acting P. J.

_____/s/_____
KRAUSE, J.

8